UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
SHAWN YOUNG,

                Plaintiff,

                v.

NEW YORK STATE CORRECTIONS AND
COMMUNITY SUPERVISION; NEW YORK
STATE OFFICE OF THE ATTORNEY
GENERAL; NEW YORK STATE OFFICE OF
MENTAL HEALTH; NEW YORK STATE
OFFICE FOR PERSON WITH
DEVELOPMENTAL DISABILITIES; JANE
DOE, *Brooklyn Supreme Court*;
JANET McFARLAND; JOHN DOES,

                Defendants.

NOT FOR PUBLICATION

**MEMORANDUM & ORDER**
18-CV-5786 (LDH) (RER)

---------------------------------------------------------------

LaSHANN DeARCY HALL, United States District Judge:

      Plaintiff Shawn Young, proceeding pro se, commenced this action on October 17, 2018, in the United States District Court for the Southern District of New York. He asserts claims pursuant to 42 U.S.C. § 1983 against four state agencies—the New York State Office of Mental Health, the New York Attorney General's Office, the New York State Department of Corrections and Community Supervision, and the New York State Office for Persons with Developmental Disabilities (the "State Agency Defendants")—a Jane Doe state-court judge, his former attorney Janet McFarland, and two John Doe psychologists. Plaintiff alleges that Defendants violated his rights in connection with his prior criminal sentencing and related sex-offender proceedings. By orders dated October 5 and 9, 2018, the district court granted Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 and transferred the case to this Court. For the

reasons set forth below, the complaint is dismissed. Plaintiff is granted leave to file an amended complaint within thirty days of the date of this order.[1]

## BACKGROUND[2]

Plaintiff's claims arise out of events that occurred between 2010 and 2015 or 2016. (Compl. at 4, ECF No. 2.) Around the time of his release from incarceration at New York's Mid-State Correctional Facility ("Mid-State") on unspecified charges, Plaintiff was interviewed by a "mental health Article 10" psychiatrist who recommended that Plaintiff be committed to a period of Strict and Intensive Supervision and Treatment ("S.I.S.T.").[3] (*Id.*) Plaintiff alleges that the psychiatrist "wrote a whole bunch of stuff to discredit [him] and took [his] history and use[d] it against [him]." (*Id.*) Plaintiff alleges that his attorney, Defendant Janet McFarland, allegedly "coerced and manipulated [him] into taking . . . parole because she said [he] would [not] have a chance if [he] took [the case] to [trial]." (*Id.*) It is unclear whether the state court imposed on Plaintiff a regimen of S.I.S.T. in connection with his parole. *See generally* N.Y. Ment. Hygiene L. § 10.11 (describing procedures for imposition of S.I.S.T.).

After leaving the state in violation of the conditions of his parole, Plaintiff was required to appear before Defendant Jane Doe, "but there was a different psych[iatrist] . . . . [who also] use[d] [Plaintiff's] history against [him] and did everything the last one did." (*Id.*) The judge

---

[1] At the time of filing the complaint, Plaintiff—whose New York State ID number is 09501912M and whose Book & Case number is 9801800043—was detained at Otis Bantum Correctional Center on Rikers Island, but he has since been transferred to North Infirmary Command on Rikers Island. It is Plaintiff's obligation to keep the Court updated with his current mailing address. For now, however, as a courtesy to plaintiff, the Clerk of Court is directed to update Plaintiff's mailing address and to mail a copy of this order and the docket sheet to Plaintiff at the North Infirmary Command.

[2] The Court ascertains the following facts from Plaintiff's statement of claim.

[3] Article 10 of New York's Mental Hygiene Law ("Article 10"), which provides for the court-ordered psychiatric examination and civil commitment or supervision of sex offenders, including by Strict and Intensive Supervision and Treatment ("S.I.S.T."). See generally N.Y. Ment. Hygiene L. §§ 10.01–10.17.

sentenced Plaintiff to "extra time" in prison, and he is currently serving a sentence of up to three years' incarceration. (*Id.*) Plaintiff alleges that the sentencing judge informed him that "when [he eventually] finish[es] court for S.I.S.T. [he will] either go home or to a hospital." (Compl. 4.) It is unclear whether Plaintiff is subject to a regimen of S.I.S.T. during his current period of incarceration.[4]

Plaintiff alleges that his designation as a sex offender has caused him "massive amounts of stress"; separated him from his family when he was not incarcerated; and, since re-incarceration, subjected him to death threats, physical harm and delays in receiving his "law work." (*Id.* at 5.) Plaintiff seeks $2.5 million in damages and an order removing him from the sex-offender registry. (*Id.*) He also wants the court to "contact the victim" of his prior criminal conviction and "tell what really happen[ed] and let her know she won't get in trouble if she tell[s] the truth." (*Id.*)

## STANDARD OF REVIEW

A district court "shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Upon review, a district court shall dismiss a prisoner's complaint *sua sponte* if it is "(1) frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b). Moreover,

---

[4] Article 10 provides for the court-ordered imposition of a regimen of S.I.S.T. during a period of either parole in the community or civil commitment in a secure treatment facility. N.Y. Ment. Hygiene L. §§ 10.10, 10.11. Article 10 does not provide for imposing a regimen of S.I.S.T. during a period of criminal incarceration. Moreover, New York's Office of Mental Health operates two secure treatment facilities, neither of which is located on Rikers Island. *See* N.Y. State Office of Mental Health, *2016 Annual Report on the Implementation of Mental Hygiene Law Article 10*, at 4 (Feb. 2017) (identifying "secure treatment facilities . . . located on the grounds of Central New York Psychiatric Center . . . and St. Lawrence Psychiatric Center"), https://www.omh.ny.gov/omhweb/forensic/bsoect/2016-somta-annual-report.pdf.

a district court "shall dismiss" an *in forma pauperis* action where it is satisfied that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id*. While this standard requires more than a "sheer possibility" of a defendant's liability, *id*., "[i]t is not the [c]ourt's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the court must accept the factual allegations of the complaint as true." *Id*. (citations omitted).

Moreover, where, as here, a plaintiff is proceeding pro se, his pleadings "'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 55 U.S. 89, 94 (2007) (per curiam)). This rule is "particularly so when the pro se plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Still, "even pro se plaintiffs

4

asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I.     Failure to Comply with Rule 8 of the Federal Rules of Civil Procedure

As an initial matter, the complaint fails to comply with the dictates of Rule 8 of the Federal Rule of Civil Procedure. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Instead, a plaintiff must provide facts sufficient to "give the defendant[s] fair notice of what the claim[s] [are] and the grounds upon which [they] rest[]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks, ellipses, and citation omitted). Here, Plaintiff alleges that the conduct at issue took place over a five- or six-year period between 2010 and 2016, with no further specificity. He does not, for example, identify the approximate dates of his release from Mid-State, his first Article 10 proceeding, his parole-violation hearing, or his subsequent Article 10 proceeding. Nor does he specify the terms of his alleged S.I.S.T. regimen.

### II.    Absolute Immunities

Normally, "absolute immunity is an affirmative defense whose availability depends on the nature of the function being performed by the defendant official who is alleged to have engaged in the challenged conduct." *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005). But where "the nature of that function is often clear from the face of the complaint. . . . , the absolute immunity defense may be resolved as a matter of law" on the pleadings. *Id.* (dismissing claims on a 12(b)(6) motion).

### A. The State Agency Defendants: Sovereign Immunity

The Eleventh Amendment to the United States Constitution bars civil actions against state agencies unless Congress enacts a carve-out or the state waives its sovereign immunity. *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004). "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Congress has not carved out, nor has New York waived, sovereign immunity from § 1983 suits against the state or its agencies. *See McMillan v. N.Y. State Bd. of Elections*, 449 F. App'x 79, 80 (2d Cir. 2011) (summary order) (affirming dismissal under Eleventh Amendment of § 1983 claims against state agency); *Cater v. New York*, 316 F. Supp. 3d 660, 667 (S.D.N.Y. 2018) (dismissing § 1983 claims against state agencies). Accordingly, Plaintiff's claims against the State Agency Defendants must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

### B. Defendant Jane Doe: Judicial Immunity

Plaintiff's claim against Defendant Jane Doe, who appears to be a justice of the Supreme Court of Kings County, New York,[5] arises out of Plaintiff's allegation that her imposition of a regimen of S.I.S.T. "made [him] do extra time on an illegal sentence." (Compl. at 4.) "It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt,* 579 F.3d 204, 209 (2d Cir. 2009).[6]

---

[5] Plaintiff identifies Jane Doe as a "Judge" of the "Brooklyn Supreme Court." (Compl. at 3.)

[6] Although judicial immunity can be overcome under some circumstances, no such facts are alleged here. *See Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) ("[The United States Supreme Court's] cases make clear that the immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.").

C.  The John Doe Defendants:  Witness Immunity

Plaintiff seeks to assert § 1983 claims against the two John Doe psychiatrists who examined him at Mid-State and Rikers Island and who, presumably, testified at his Article 10 proceedings.[7]  (Compl. 3–4.)  Specifically, Plaintiff alleges that they "use[d] [his] history against [him]" in support of his civil commitment as a sex offender.  (*Id*. at 4.)  It is long settled that private parties who provide witness testimony in a judicial proceeding enjoy absolute immunity from subsequent damages actions stemming from such testimony.  *Briscoe v. LaHue*, 460 U.S. 325, 329 (1983) ("[T]he common law provided absolute immunity from subsequent damages liability for all persons—governmental or otherwise—who were integral parts of the judicial process.").  Although the Court is not aware of Second Circuit authority expressly applying the absolute witness immunity (also called the quasi-judicial immunity) to court-appointed mental-health professionals, the Second Circuit has affirmed at least one decision doing so.  *McKnight v. Middleton*, 699 F. Supp. 2d 507, 526 (E.D.N.Y. 2010) (holding that social worker and psychotherapist appointed by family court acted as "arms of the court" and therefore enjoyed absolute immunity from any claims arising out of the proceedings), *aff'd*, 434 F. App'x 32 (2d Cir. 2011) (summary order).  Other circuit courts, as well as other district courts in this circuit, have squarely applied the absolute immunity to such witnesses.[8]  Indeed, in a factually similar

---

[7] Article 10 provides, in relevant part, that upon the attorney general's request, a "court shall order that the respondent submit to an evaluation by a psychiatric examiner chosen by the attorney general . . . .  Following the evaluation, such psychiatric examiner shall report his or her findings in writing to the attorney general, to counsel for the respondent, and to the court."  N.Y. Ment. Hygiene L. § 10.06(d).

[8] *E.g.*, *Hughes v. Long*, 242 F.3d 121, 126 (3d Cir. 2001) (applying absolute immunity to court-appointed psychological evaluators in a child-custody case, "because they acted as 'arms of the court,' similar to a guardian ad litem or a court-appointed doctor or psychologist, a non-judicial person who fulfills a quasi-judicial role at the court's request"); *Moses v. Parwatikar*, 813 F.2d 891, 892 (8th Cir. 1987) ("As a psychiatrist appointed by the court to conduct a competency examination, Dr. Parwatikar performed functions essential to the judicial process."); *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984) (noting, in dicta, that absolute immunity would have shielded child-custody psychologist and psychiatrists who had already asserted successful statute-of-limitations

case, the Seventh Circuit relied on *Briscoe* to hold that the defendant psychologists enjoyed absolute immunity from the plaintiff's § 1983 claims "for allegedly violating his right to due process [by testifying] in connection with his commitment as a sexually violent person." *Barksdale v. Joyce*, 696 F. App'x 746, 747 (7th Cir. 2017). Likewise, another court in this district explained that the quasi-judicial absolute immunity would shield a defendant social worker from § 1983 claims arising out of her recommendation to a state court that the plaintiff undergo sex-offender treatment as a condition of his parole, and the Second Circuit affirmed. *Colliton v. Bunt*, No. 15-CV-6580, 2016 WL 7443171, at *8 n.11 (S.D.N.Y. Dec. 27, 2016), *aff'd*, 709 F. App'x 82 (2d Cir. 2018) (summary order).[9] The Court finds the reasoning of these cases persuasive and concludes that absolute quasi-judicial immunity protects court-appointed psychiatrists from claims arising from their participation in Article 10 proceedings.

Here, as Plaintiff alleges, the John Doe Defendants played integral roles in the judicial proceeding that resulted in the imposition of S.I.S.T. Because the Court holds that the John Doe Defendants enjoy absolute immunity from claims arising out of their participation in Article 10 proceedings, Plaintiff's claims against them are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

---

defenses); *Walton v. Rubel*, No. 16-CV-1989, 2018 WL 3369664, at *3 (E.D.N.Y. July 10, 2018) (collecting district-court cases); *but cf. Watterson v. Page*, 987 F.2d 1, 7 (1st Cir. 1993) (declining to decide whether court-appointed psychologists were entitled to absolute immunity in light of "more conventional reasons [the psychologists' were] clearly entitled to prevail," *i.e.*, the plaintiff's failure to adduce a constitutional harm).

[9] In *Colliton*, the district court primarily based its dismissal on its reasoning that the defendant social worker was not a state actor for the purpose of § 1983. 2016 WL 7443171, at *7–8. Other courts in this district have similarly dismissed § 1983 claims against court-appointed psychologists or testifying doctors on the grounds that they are not state actors. *E.g.*, *Elmasri v. England*, 111 F. Supp. 2d 212, 221 (E.D.N.Y. 2000) (dismissing claims against court-appointed psychologist in child-custody case); *Storck v. Suffolk Cty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 942 (E.D.N.Y. 1999) ("The mere fact that the defendant doctors reported their suspicions of child abuse pursuant to a state statute does not render the defendant doctors . . . state actors."). This reasoning appears to provide an alternative basis for dismissal here.

### III. Inadequate Pleading as to Defendant McFarland

Plaintiff's claim against Defendant McFarland fails because she was not a state actor for the purpose of § 1983. To sustain a § 1983 claim, Plaintiff must allege that the wrongful conduct was "committed by a person acting under color of state law." *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir. 1994). "[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *accord Housand v. Heiman,* 594 F.2d 923, 924–25 (2d Cir. 1979). "This is true even if the attorney is employed by [MHLS], a state-funded legal services agency under the direction of the New York State Office of Court administration." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 378 (S.D.N.Y. 2005).

Here, Defendant McFarland was either Plaintiff's public defender or the Mental Health Legal Services ("MHLS") lawyer appointed to represent Plaintiff in his Article 10 proceeding. (*See* Compl. at 3–4 (identifying McFarland's address as the "Brooklyn Supreme Court/Office of Mental Health and describing McFarland's advice to Plaintiff to accept parole and avoid trial).) Because Plaintiff's only allegations against Defendant McFarland regard actions she took in connection with representing him, she is not a state actor for the purpose of § 1983. Plaintiff's claim against her is therefore dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### IV. Leave to Amend

In light of plaintiff's pro se status, the Court grants Plaintiff thirty days to amend his complaint in order to comply with the dictates of Rule 8. *See, e.g., Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) ("'Certainly the court should not dismiss without granting leave to amend at

least once when a liberal reading of the [pro se] complaint gives any indication that a valid claim might be stated.'") (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).

In the amended complaint, Plaintiff should name as proper defendants those individuals who have some personal involvement in the actions he alleges in the amended complaint and provide the dates and locations for each relevant event. Even if plaintiff does not know the names of the individuals, he may identify each of them as John Doe or Jane Doe. To the best of his ability, Plaintiff must describe each individual and the role she or he played in the alleged deprivation of his rights. Plaintiff is informed that the statute of limitations applicable to his § 1983 claims is three years from the date such claims accrued. *See Owens v. Okure*, 488 U.S. 235, 251 (1989) (applying New York's general statute of limitations for personal-injury actions).

## CONCLUSION

For the foregoing reasons, Plaintiff's complaint is dismissed in its entirety. Plaintiff's claims against the State Agency, Jane Doe, and John Doe Defendants are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2). Plaintiff's claim against Defendant Janet McFarland is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Plaintiff is granted thirty days to amend his complaint. Should Plaintiff decide to file an amended complaint, it must be submitted within thirty days of this order, be captioned "Amended Complaint," and bear the same docket number as this order. Plaintiff is advised that the amended complaint will completely replace the original complaint, so Plaintiff must include in it any allegations he wishes to pursue against proper defendants. To aid Plaintiff with this task, the Clerk of Court is respectfully requested to provide him with a "Complaint for Violation of Civil Rights (Prisoner)" form.

If Plaintiff fails to comply with this order within the time allowed, the action shall be dismissed and judgment shall enter.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
 February 13, 2019

s/ LDH
LaSHANN DeARCY HALL
United States District Judge